United States District Court
Northern District of California

1
2
3
4
5 **UNITED STATES DISTRICT COURT**

6 **NORTHERN DISTRICT OF CALIFORNIA**

7 **SAN JOSE DIVISION**

8

9 DANA FRANCO,                                          Case No. 16-cv-03334-BLF

10                     Plaintiff,                       **ORDER GRANTING DEFENDANT CIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

11          v.

12 EXPERIAN INFORMATION SOLUTIONS, INC., et al.,        [RE: ECF 50]

13
                      Defendants.
14

15          Defendant CIG Financial, LLC ("CIG") moves to dismiss Plaintiff Dana Franco's claims

16 against it for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and

17 the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code §

18 1785.25(a).  For reasons discussed below, the motion is GRANTED WITH LEAVE TO AMEND.

19 **I.      BACKGROUND[1]**

20          Plaintiff filed for Chapter 13 bankruptcy protection on September 5, 2013 and her plan was

21 confirmed on January 7, 2014.  First Am'd Compl. ("FAC") ¶¶ 93, 97, ECF 40.  On August 11,

22 2015, Plaintiff "ordered a three bureau report from Equifax, Inc. to ensure proper reporting by

23 Plaintiff's Creditors."  *Id.* ¶ 98.  She alleges that this report ("August 2015 Credit Report")

24 included ten different trade lines containing inaccurate, misleading, or incomplete information.  *Id.*

25 ¶ 99.  Plaintiff neither attaches a copy of the August 2015 Credit Report nor provides specifics

26 regarding the alleged inaccuracies contained therein.  *Id.*  She asserts only that "multiple trade

27

28 [1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1    lines continued to report Plaintiff's accounts with past due balances, inaccurate balances, in

2    collections, and/or charged off.  Some accounts even failed to register that Plaintiff was making

3    payments on the account through Plaintiff's Chapter 13 plan." *Id.*

4         Plaintiff disputed the inaccurate trade lines via certified mail sent to three different credit

5    reporting agencies ("CRAs"), Experian, Equifax, Inc., and TransUnion, LLC on February 11,

6    2016. *Id.* ¶ 100.  Each CRA received Plaintiff's dispute letter and in turn notified the entities that

7    had furnished the disputed information ("furnishers") by means of automated credit dispute

8    verifications ("ACDVs").  *Id.* ¶ 102.

9         Plaintiff ordered a second three bureau report from Equifax, Inc. on April 11, 2016 ("April

10   2016 Credit Report").  *Id.* ¶ 103.  Plaintiff alleges that at that time a number of furnishers,

11   including CIG, improperly were reporting Plaintiff's accounts as having balances and past due

12   balances, which was inconsistent with Plaintiff's confirmed Chapter 13 plan.  FAC ¶¶ 103-08.

13        Plaintiff filed this action on June 15, 2016, asserting violations of the FCRA and CCRAA

14   against multiple CRAs and furnishers.  Compl., ECF 1.  CIG moved to dismiss Plaintiff's

15   complaint and instead of opposing CIG's motion, Plaintiff filed the operative FAC.  CIG now

16   moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

17   **II.    LEGAL STANDARD**

18        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

19   claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

20   *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

21   729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

22   as true all well-pled factual allegations and construes them in the light most favorable to the

23   plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

24   Court need not "accept as true allegations that contradict matters properly subject to judicial

25   notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

26   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

27   (internal quotation marks and citations omitted).  While a complaint need not contain detailed

28   factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

2

1    relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

2    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

3    court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4    **III.   DISCUSSION**

5        The FAC contains two claims, one for violation of the FCRA (Claim 1) and the other for

6    violation of the CCRAA (Claim 2).  CIG seeks dismissal of both claims under Rule 12(b)(6).

7        **A.     FCRA (Claim 1)**

8        The FCRA creates a private right of action against furnishers for noncompliance with

9    duties imposed under 15 U.S.C. § 1681s-2(b). *Gorman*, 584 F.3d at 1154.  Section 1681s-2(b)

10   imposes certain obligations on a furnisher, such as a duty to conduct an investigation, when the

11   furnisher receives notice from a CRA that a consumer disputes information reported by the

12   furnisher. *Id.*  A plaintiff is required to plead and prove four elements to prevail on an FCRA

13   claim against a credit furnisher:  "(1) a credit reporting inaccuracy existed on plaintiff's credit

14   report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as

15   inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate

16   information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further

17   failed to comply with the requirements in 15 U.S.C. § 1681s-2(b) (1)(A)-(E)." *Denison v.*

18   *Citifinancial Servicing LLC*, No. C 16-00432 WHA, 2016 WL 1718220, at *2 (N.D. Cal. Apr. 29,

19   2016).  A furnisher's duties under § 1681s-2(b) of the FCRA arise "only after the furnisher

20   receives notice of dispute from a CRA." *Gorman*, 584 F.3d at 1154.

21       Plaintiff's FCRA claim against CIG is subheaded "Failure to Reinvestigate." FAC ¶ 110-

22   11.  Plaintiff alleges that CIG "violated section 1681s-2(b) by failing to conduct a reasonable

23   investigation and re-reporting misleading and inaccurate account information." *Id.* ¶ 113.

24   Presumably, this claim is based upon CIG's conduct upon receiving notice of Plaintiff's dispute

25   regarding the August 2015 Credit Report.  Plaintiff alleges that she sent dispute letters to Experian

26   and other CRAs regarding unidentified inaccuracies contained in the August 2015 Credit Report,

27   and that the CRAs in turn sent Plaintiff's dispute to each furnisher by means of an ACDV. *Id.* ¶¶

28   100-02.

3

1    CIG argues that Plaintiff has not alleged facts sufficient to satisfy the first element of a

2    claim under § 1681s-2(b), the existence of a credit reporting inaccuracy. The Court agrees for the

3    reasons discussed below. Before turning to CIG's arguments on the issue of inaccuracy, however,

4    the Court addresses CIG's request for judicial notice of documents filed in Plaintiff's bankruptcy

5    case. *See* RJN, ECF 51. The request is GRANTED, as the documents are proper subject for

6    judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.

7    2006).

8                    **1.    Vague Allegations Regarding Contents of August 2015 Credit Report**

9    CIG first points out that although Plaintiff argues that CIG's reporting was "inaccurate and

10   or incomplete," FAC ¶ 117, Plaintiff does not allege what facts are inaccurate or missing from the

11   August 2015 Credit Report upon which her FCRA claim is based. The Court agrees. As

12   discussed above, Plaintiff's allegations regarding the contents of the August 2015 Credit Report

13   are quite vague. She alleges only that "multiple trade lines continued to report Plaintiff's accounts

14   with past due balances, inaccurate balances, in collections, and/or charged off. Some accounts

15   even failed to register that Plaintiff was making payments on the account through Plaintiff's

16   Chapter 13 plan." FAC ¶ 99. Plaintiff argues that more specificity is provided at paragraphs 106

17   and 107 of the FAC. *See* Pl.'s Opp. at 4-5, ECF 61. However, those paragraphs describe the

18   contents of the April 2016 Credit Report that Plaintiff obtained to ensure that her accounts had

19   been updated following her letters of dispute regarding the earlier August 2015 Credit Report. *See*

20   FAC ¶¶ 103-07. Plaintiff does not allege that she disputed the April 2016 Credit Report.

21   Therefore, inaccuracies in the April 2016 Credit Report cannot form the basis of her claim.

22                   **2.    Reporting After Confirmation of Chapter 13 Plan**

23   More fundamentally, to the extent that Plaintiff claims that it was inaccurate for CIG to

24   report balances or past due balances after plan confirmation, that theory of liability has been

25   rejected by courts in this district and other districts within the Ninth Circuit. *See, e.g., Artus v.*

26   *Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *5 (N.D. Cal. Jan. 24,

27   2017) (collecting cases); *Doster*, 2017 WL 264401, at *6 ("[A]s a matter of law it is not

28   misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy.");

4

1   *Polvorosa v. Allied Collection Serv., Inc.*, No. Case No. 2:16–CV–1508 JCM (CWH), 2017 WL

2   29331, at \*3 (D. Nev. Jan. 3, 2017) ("[R]eporting delinquencies during the pendency of a

3   bankruptcy or during a bankruptcy's automatic stay is not itself a violation of the FCRA.").

4          Plaintiff argues that these decisions fail to recognize that a bankruptcy court's order

5   confirming a Chapter 13 plan constitutes a binding final judgment regarding the rights and

6   liabilities of the debtor and his or her creditors.  According to Plaintiff, because a confirmed plan

7   modifies the original debts, any post-confirmation reporting of pre-confirmation delinquencies or

8   balances is inaccurate.  It is true that "[t]he provisions of a confirmed plan bind the debtor and

9   each creditor."  11 U.S.C. § 1327(a).  Thus a creditor seeking payment on a debt is entitled only to

10  those payments provided for under the plan, and "any issue decided under a plan is entitled to *res*

11  *judicata* effect."  *In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015).  However, the Court

12  declines to make the logical leap urged by Plaintiff that these authorities, governing the

13  relationships between parties to a bankruptcy action, make it a violation of the FCRA for a

14  furnisher to report a historically accurate pre-confirmation debt or delinquency.  Regardless of

15  how the rights and obligations of the parties to a bankruptcy are modified by a Chapter 13 plan,

16  the original debt did exist prior to confirmation and Plaintiff has cited no authority suggesting that

17  bankruptcy proceedings "erase" that historical fact for purposes of the FCRA.

18         Plaintiff's reliance on *In re Luedtke*, No. 02-35082-svk, 2008 WL 2952530 (Bankr. E.D.

19  Wis. July 31, 2008), is misplaced.  In *Luedtke*, the bankruptcy court concluded that a creditor

20  whose claim was modified by a Chapter 13 confirmation order had violated that order by

21  continuing to report the original debt to CRAs.  *Id.* at \*6.  The court suggested that in addition to

22  seeking sanctions for violation of the confirmed plan, the debtor also could have sought relief

23  under the FCRA.  *Id.*  In making that suggestion, the bankruptcy court appeared to assume that the

24  creditor's reporting of the original debt would have constituted an inaccuracy under the FCRA.

25  *Id.* at \*5.  That view, expressed in *dicta* by a bankruptcy court outside the Ninth Circuit almost a

26  decade ago, has not been adopted by the courts in this district.  At least one court outside the

27  district has found the decision to be irrelevant to determination whether a plaintiff had pleaded a

28  viable FCRA claim.  *See, e.g., Wylie v. TransUnion, LLC*, No. 3:16-CV-102, 2017 WL 835205, at

5

1    *5 n.6 (W.D. Pa. Mar. 2, 2017) ("[T]he question before the Court is whether Defendants reported

2    accurate information, not whether Defendant violated the bankruptcy code.") (internal quotation

3    marks and citation omitted).

4         Moreover, with respect to the many debtors who fail to make all required plan payments,

5    the original debt terms ultimately are reinstated. *See Blendheim*, 803 F.3d at 487. Indeed,

6    historically accurate debts may be reported even after discharge, so long as the credit report

7    indicates that the debts were discharged in bankruptcy. *See Mortimer v. Bank of Am., N.A.*, No. C-

8    12-01959 JCS, 2013 WL 1501452, *9-11 (N.D. Cal. Apr. 10, 2013) (furnisher's reporting that the

9    debt had been delinquent during the pendency of the bankruptcy was historically accurate and thus

10   not actionable under the FCRA where report also indicated that the debt had been discharged in

11   bankruptcy).

12        Plaintiff's counsel argued at the hearing that allowing reporting of pre-confirmation

13   delinquencies or balances after a Chapter 13 plan has been confirmed will deprive debtors of

14   significant benefits that they expect to obtain through Chapter 13 bankruptcy. That issue is one

15   for Congress to resolve, not this Court. The Court's task in evaluating Plaintiff's FAC is to

16   determine whether the facts alleged therein make out a plausible claim that CIG's credit reporting

17   was inaccurate. The Court simply is not persuaded that the reporting of a balance or past due

18   balance after plan confirmation is per se inaccurate under the FCRA.

19        However, it appears to be an open question whether such reporting could satisfy the

20   inaccuracy requirement if the report is unaccompanied by any indication that the consumer is in

21   bankruptcy. *See Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL

22   86131, at *7 (N.D. Cal. Jan. 10, 2017) (declining to decide whether allegations that the "credit

23   report contained no indication at all that the debts were the subject of a pending bankruptcy . . .

24   would be sufficient to state a claim" but granting plaintiff leave to attempt to assert FCRA claim

25   based on that theory). It is this Court's view that it may well be possible for a plaintiff to allege

26   facts showing that the reporting of a pre-confirmation debt or delinquency is materially misleading

27   absent any reference to a pending Chapter 13 bankruptcy in the report, at least where a confirmed

28   plan governs the timing and amounts of post-confirmation payments on the debt.

6

1    Plaintiff has not alleged such facts here, as she has not identified any particular inaccuracy

2    contained in the August 2015 Credit Report upon which her claim is based, and has not stated

3    whether the August 2015 Credit Report mentioned her bankruptcy.

4                **3.    Metro 2 Format**

5    In addition to her theory of FCRA liability based on the effect of plan confirmation,

6    Plaintiff asserts a related theory based on industry standards regarding credit reporting.  She

7    devotes more than thirty paragraphs of the FAC to a tutorial on industry standards and in

8    particular the "Metro 2 format" adopted by the Consumer Data Industry Association ("CDIA").

9    *See* FAC ¶¶ 37-71.  According to Plaintiff, Metro 2 provides instruction on what updates must be

10   made when a bankruptcy is filed, and deviation from the Metro 2 format is inaccurate or

11   misleading.  The Ninth Circuit has not spoken on the effect of the Metro 2 format, if any, on the

12   obligations of furnishers under the FCRA.  However, district courts within the Ninth Circuit

13   overwhelmingly have held that a violation of industry standards is insufficient, without more, to

14   state a claim for violation of the FCRA.  *See, e.g., Doster*, 2017 WL 264401, at *5 (collecting

15   cases); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-CV-03645-EMC, 2016 WL 7188015, at *3

16   (N.D. Cal. Dec. 12, 2016).

17   The out-of-district cases cited by Plaintiff do not persuade this Court to take a contrary

18   view.  In *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-CV-00624-JAG, 2013 WL 2389878, at *7

19   (E.D. Va. May 30, 2013), the district court held that industry standards could be considered at the

20   summary judgment stage as part of the totality of evidence regarding the reasonableness of

21   Experian's failure to identify the main source of disputed information.  That ruling does not

22   advance Plaintiff's argument that deviation from Metro 2 constitutes a per se inaccuracy under the

23   FCRA.  In *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15CV1675 JLS (DHB), 2016

24   WL 4508241, at *5 (S.D. Cal. June 6, 2016), the district court held that the plaintiff had alleged a

25   claim under the FCRA where she alleged that Metro 2 was Synchrony's chosen method of

26   reporting and that Synchrony's deviation from Metro 2 might be misleading to such an extent as to

27   affect credit decisions.  Courts in this district have found such allegations to be insufficient.  *See,*

28   *e.g., Mestayer*, 2016 WL 7188015, at *3 (credit report that deviated from Metro 2 was not

7

1    misleading where report disclosed bankruptcy); *see also Doster*, 2017 WL 264401, at *5

2    (collecting cases). This Court finds the latter decisions to be better reasoned and therefore

3    concludes that allegations that a credit report deviated from the Metro 2 format is insufficient,

4    without more, to state a claim under the FCRA.

5         The Court does not mean to suggest that Metro 2 is wholly irrelevant to the evaluation of a

6    claim asserted under the FCRA. It may be that allegations of deviations from the Metro 2 format

7    could bolster other allegations of inaccuracy or be relevant to allegations of negligence on the part

8    of the reporting entity. However, Plaintiff's reliance on Metro 2 as an independent source of

9    liability under the FCRA is unavailing.

10        Accordingly, CIG's motion to dismiss Plaintiff's FCRA claim is GRANTED.

11   **B.     CCRAA (Claim 2)**

12        Subject matter jurisdiction in this case is based on federal question with respect to

13   Plaintiff's FCRA claim and supplemental jurisdiction with respect to her CCRAA claim. *See* FAC

14   ¶ 13. Plaintiff has yet to allege a viable federal claim, and if she fails to do so this Court will

15   decline to exercise supplemental jurisdiction over her state law claim. *See Sanford v.*

16   *MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-

17   law claims are eliminated before trial, the balance of factors to be considered under the pendent

18   jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward

19   declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation marks

20   and citation omitted).

21        Accordingly, the Court DECLINES TO ADDRESS the merits of Plaintiff's CCRAA claim

22   against CIG at this time.

23   **IV.   LEAVE TO AMEND**

24        Having concluded that CIG is entitled to dismissal of Plaintiff's FCRA claim, the Court

25   must determine whether leave to amend is warranted. In deciding whether to grant Plaintiff leave

26   to amend her pleading, the Court must consider the factors set forth by the Supreme Court in

27   *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence*

28   *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant

8

1    leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith

2    or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to

3    the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is

4    the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However

5    a strong showing with respect to one of the other factors may warrant denial of leave to amend.

6    *Id.*

7           The first factor (undue delay), second factor (bad faith), and fourth factor (undue

8    prejudice) do not weigh against granting leave to amend at this time, although the Court may well

9    have a different view in the event that Plaintiff's counsel fails to address the deficiencies

10    addressed herein and persists in submitting pleadings consisting primarily of copy-and-paste

11    boilerplate allegations. The third factor (failure to cure deficiencies) weighs slightly against

12    granting leave to amend, as Plaintiff previously amended her pleading. Finally, with respect to the

13    fifth factor (futility of amendment), the Court has grave reservations whether Plaintiff will be able

14    to state a viable FCRA claim against CIG. However, because it is not clear that Plaintiff cannot

15    do so, the Court will grant her leave to amend.

16           If Plaintiff chooses to amend her FCRA claim, she shall allege with specificity what

17    reporting is attributable to each defendant and shall attach a copy of each report or allege the

18    contents of the offending trade lines verbatim. Failure to do so will be deemed an admission that

19    Plaintiff is incapable of pleading specific facts giving rise to liability under the FCRA.

20    **VI.   ORDER**

21           (1)    Defendant CIG's motion to dismiss the FAC is GRANTED WITH LEAVE

22                    TO AMEND as to Plaintiff's FCRA claim; the Court declines to address Plaintiff's

23                    CCRAA claim unless and until Plaintiff states a viable federal claim;

24           (2)    Leave to amend is limited to the FCRA claim discussed in this order and the related

25                    CCRAA claim; Plaintiff may not add new claims or parties without express leave

26                    of the Court;

27           (3)    Any amended pleading shall be filed on or before May 9, 2017; and

28           (5)    Failure to meet the May 9 deadline to file an amended complaint or failure to cure

the deficiencies identified in this Order will result in a dismissal of Plaintiff's

claims with prejudice.

Dated:  April 18, 2017

BETH LABSON FREEMAN
United States District Judge